HICKOK v. BUNTING et al.

(Supreme Court, Appellate Division, First Department. January 10, 1902.)

1. TRUST—DECLARATION—RES—GIFT—SETTING APART.

An instrument reciting, "Having been cause of a money loss to my friend H., I have given her $3,000. I hold this amount in trust for her," —is not sufficient to establish a trust, where no money or property representing such amount was set apart as the subject of the trust.

**2. PROMISSORY NOTE—WHAT CONSTITUTES.**

A written instrument reciting that, "Having been cause of a money loss to my friend H., I have given her $3,000. I hold this amount in trust for her, and one year after date, or thereafter on demand, I promise to pay to the order of H., her heirs or assigns, $3,000 and interest,"—signed by the obligor,—constitutes a promissory note.

**3. DECEASED PERSON — TRANSACTION — INTERESTED WITNESS — OBJECTION — WAIVER.**

Where no objection to the evidence of an interested party as to a personal transaction with an opposing party's testatrix is made, under Code Civ. Proc. § 829, rendering such evidence incompetent, it becomes proof in the case, and entitled to consideration.

**4. NOTE—DELIVERY — INTERESTED WITNESS — UNCONTRADICTED TESTIMONY — QUESTION FOR JURY.**

The uncontradicted evidence of a payee of a note as to its delivery merely raises a question for the jury, as the jury is entitled to judge of the credibility of an interested witness.

**5. NOTE—EXECUTION—DELIVERY—EVIDENCE—QUESTION FOR JURY.**

A note for $3,000. made to plaintiff by defendant's testatrix, was all in plaintiff's handwriting, except the signature and date at the bottom, which were conceded to have been written by the testatrix. The only evidence of delivery was plaintiff's testimony that she received the note in a letter, and testimony of two relatives with whom she lived, that she received many letters and showed them the note about the time she received it. After the note was due, plaintiff borrowed $1,000 from the testatrix and her sisters, giving a note therefor. Several letters, passing between them, did not refer to the note, or to any indebtedness from testatrix to plaintiff. An expert testified that the body of the note was written with different ink, and was of a comparatively later date than the signature and the date. *Held*, that the execution and delivery of the note were for the jury, and the direction of a verdict for plaintiff was error.

**6. SAME—CONSIDERATION.**

In an action against executors by the payee of a note of their testator, there was no evidence of consideration except a recital preceding the promise to pay, that, "having been cause of a money loss to my friend," the plaintiff, "I have given her $3,000;" plaintiff's testimony that they had had money transactions, and testator spoke of "the subject of her feeling that she owed me;" and the testimony of plaintiff's daughter that she once said to testator, "You lost $3,000 of my mother's," to which testator answered that that had nothing to do with the matter they were talking about. *Held*, that the existence of a consideration was for the jury, and the direction of a verdict for plaintiff was error.

Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Action by Gerardine H. Hickok against Elizabeth M. Bunting and others. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Herbert Parsons, for appellants.

Alfred B. Cruikshank, for respondent.

HATCH, J. This action was brought to recover upon an instrument in writing, of which the following is a copy:

"New York, December, 1893. Having been cause of a money loss to my friend Gerardine H. Hickok, I have given her three thousand dollars. I hold this amount in trust for her, and one year after date or thereafter, on

demand, I promise to pay to the order of Gerardine H. Hickok, her heirs or assigns, three thousand dollars, with interest. Ella F. Bunting. 1, 16, '94. 216 East 12 St., N. Y."

The instrument remained in the possession of the plaintiff after its alleged delivery to her; and as she is the person now seeking to enforce the same against the estate of the deceased, the rights and liabilities created by it are not affected by the intervention of third parties. The instrument begins by reciting that the deceased had been the cause of a money loss to the plaintiff, for which she had given her $3,000. How such loss was occasioned is not expressed in the instrument, nor was it shown upon the trial; and while the instrument recites that the deceased has given the plaintiff $3,000, yet the proof upon the trial distinctly establishes that no money passed between the parties, and at the time of the alleged delivery of the instrument no money was present or delivered by the deceased to the plaintiff, or to any one else. Except, therefore, as this language may be construed as bearing upon a consideration for the instrument itself, it has no force. The language following contains what would be a good declaration of trust, assuming that there was a res to which it could attach. It is not claimed by the plaintiff, nor does the evidence establish, that the deceased had, at the time of the execution of the instrument, assuming that she executed it, $3,000, or any other sum of money, or other property representing it, which was set apart, or in any manner placed so that it could become the subject of a trust. In order to constitute a trust there must be a res to which it can attach, and where that does not exist there is nothing which can be made the subject of a trust (Hamer v. Sidway, 124 N. Y. 538, 27 N. E. 256, 12 L. R. A. 463, 21 Am. St. Rep. 693; Curry v. Powers, 70 N. Y. 212, 26 Am. Rep. 577). It is, therefore, evident that this instrument did not constitute the deceased a trustee of the plaintiff for the $3,000, or of any other sum or property, and no liability attached to her estate in such capacity.

Following the declaration of trust the instrument contains a promise to pay one year after date, or on demand, to the order of the plaintiff, her heirs or assigns, $3,000, with interest. There are no words of limitation of this promise in the language preceding it. The promise to pay is express, and is to the order of the payee, and it contains every essential element to constitute a promissory note, as defined by the negotiable instruments law (section 320, c. 612, Laws 1897), and by authority (Carnwright v. Gray, 127 N. Y. 92, 27 N. E. 835, 12 L. R. A. 845, 24 Am. St. Rep. 424). It is quite probable that the note is negotiable, and subject to the law merchant. But whether it is or not is of no consequence in the present case, for the reason that the rights and liabilities of the parties affected by it are in no wise changed, whether it be negotiable or nonnegotiable; and as respects consideration and delivery, it is subject to the same rules in either case. Carnwright v. Gray, supra. The plaintiff was, therefore, correct in declaring upon the instrument as a promissory note.

If the instrument itself was the act of the deceased, and was founded upon a good consideration, support would clearly exist for

the direction of a verdict, made by the court, in favor of the plaintiff for the amount secured to be paid by it. It was conceded upon ·the trial that the signature and the date attached to the instrument were in the handwriting of the deceased; and the court seems to have assumed that, as such fact was conceded, the liability of the deceased to pay the sum secured by it was established; and upon this theory he directed the jury to find a verdict for the sum secured ·to be paid. Unless the evidence given upon the trial raised a question of fact for the determination of the jury as to whether the instrument as a whole was the act of the deceased, founded upon a good consideration, the direction of the court was clearly right, and the judgment entered thereon should be sustained.

The plaintiff was called as a witness, and testified that she had money transactions with the deceased prior to December, 1893, and that between the 18th and 20th of that month she was at the house of the deceased, and wrote the body of ·the note at her dictation and at her request, and that there was no one else present at the time when the note was written. Whether the note was signed at this time the witness does not state, but it was not then delivered, .as the witness further testified that in January, 1894, but upon what day she did not recollect, she received the instrument in a letter sent to her by the deceased. This is the only evidence in the case showing that the body of the instrument was written at the dictation of the deceased, and that part of it is conceded to be in the handwriting of the plaintiff. It is evident that the evidence dis·closed a personal transaction between the plaintiff and the deceased, and was, therefore, inadmissible, under section 829 of the Code of Civil Procedure. No objection, however, was interposed by the defendants to the admission of the testimony, and it therefore be·came proof in the case which the court was entitled to consider. The plaintiff was, however, an interested witness, and the question ·of her credibility was for the jury. It was within their province to ·disbelieve her upon this subject. Elwood v. Telephone Co., 45 N. Y. 549, 6 Am. Rep. 140; Volkmar v. Railway Co., 134 N. Y. 418, 31 N. E. 870, 30 Am. St. Rep. 678. So far, therefore, as this testimony tended to show that the instrument was the act of the deceased, it was clearly a question for the jury, as was also the evi·dence respecting its delivery. In support of the fact of delivery the plaintiff called Garret H. Underhill, a nephew of plaintiff, and his wife, who gave evidence tending to show that the plaintiff received ·the instrument in a letter, at Plainfield, N. J., where the witnesses then lived, and where the plaintiff was then stopping. These wit-' nesses, however, did not see the note removed from the letter, nor were they able to state that they saw it on the day when the letter was received. The wife testified that the plaintiff received a great many letters, and she was not able to state that she saw the letter which contained the instrument opened, but both witnesses testified that at about the time of receiving the note plaintiff exhibited it to them. This is all the testimony for the plaintiff tending to establish the delivery· of the note, and it seems clear that upon this subject, if there were no other proof, a question of fact was presented

for the jury. That plaintiff's testimony upon this subject was subject to the jury's scrutiny is clear beyond question; and the testimony of the other two witnesses, when closely examined, shows that in or about January, 1894, they saw this instrument at their house in Plainfield, N. J., that it was the subject of conversation, and that a letter had been received by the plaintiff at about that time. Whether this instrument came in that letter or not the witnesses are unable to state, and it is evident that their information upon that subject is mainly derived from the declaration of the plaintiff at the time, and the jury would have been so authorized to find. The question, therefore, of the delivery of the instrument, as the act of the deceased, became a question for the jury, upon this testimony, notwithstanding the admission that the signature and date were in the handwriting of the deceased. Upon this subject the defendants offered testimony tending to establish that the deceased and her sisters had loaned to the plaintiff $1,000, to secure which two daughters of the plaintiff executed and delivered their promissory note, which was indorsed by the plaintiff. The evidence of the sisters tended to establish the fact that this money was in fact loaned to the plaintiff, and that she recognized the obligation to pay the same. This loan was made by the deceased and her sister over four years after the execution and delivery of the instrument, the subject of this action, and it still remains unpaid. Evidence was further given tending to show that the deceased and her sister Elizabeth were maiden ladies, living in most intimate relationship, and having a joint bank account. The surviving sister had never heard or known of any indebtedness of the deceased to the plaintiff, either moral or legal. It is true that the plaintiff gave evidence tending to show that the loan of the $1,000 was made to her daughters, and that she was an accommodation indorser thereon. Assuming that the jury would have been so authorized to find, the fact remains that the obligation of the deceased to pay the $3,000 note existed, and had long since become due. At the time when this loan was obtained, the plaintiff had a right to demand enforcement of the obligation against the deceased; and this presents a pertinent circumstance for the jury, as bearing upon the execution and delivery of the instrument, as well as the consideration for the same. In addition to this, a number of letters were introduced which passed between the plaintiff and the deceased and her sisters, which constitute important evidence, in view of the fact that in none of them is there any suggestion of any indebtedness on the part of the deceased to the plaintiff, until after the death of the deceased, when plaintiff wrote to Elizabeth that the deceased had given her $3,000, which she very kindly called a personal obligation. In addition to this, the defendants called the expert Carvalho, who testified that the body of the note was in different ink from that of the signature, and was of a comparatively younger date. Taking all of this testimony into consideration, and the circumstances attending the transaction, it is evident that a question of fact was fairly presented for the determination of the jury as to whether the instrument was executed and delivered as the act of the deceased.

We are also of opinion that a question was presented as to whether the note was founded upon a good consideration, assuming it to have been delivered. It is undoubtedly the law that, whether the instrument be negotiable or otherwise, to promise to pay raises the presumption of consideration, even though it was not expressed (Carnwright v. Gray, supra). Such presumption may, however, be overthrown by proof, and, when attacked by substantive testimony, becomes a question of fact, for the determination of a jury. The evidence bearing upon the question of consideration, so far as the plaintiff is concerned, is found in the recital of the instrument and in her testimony and declarations. The recital is that the deceased had been the cause of a money loss. This, standing alone, would be insufficient to show the existence of a present legal consideration, or that an enforceable obligation had ever existed. It is well settled that a mere moral or conscientious obligation, unconnected with a prior legal or equitable claim, is not sufficient consideration to support an express promise. Wennall v. Adney, 3 Bos. & P. 247; Id. 249, note; Smith v. Ware, 13 Johns. 257; Ehle v. Judson, 24 Wend. 97; Sternbergh v. Provoost, 13 Barb. 365. The consideration which the law recognizes must be founded upon the existence of a legal or equitable obligation, which might at some time have been enforced by legal remedies, or from which appear sufficient facts upon which to found an estoppel, denying right in the promisor to dispute his legal obligation. O'Hara v. Robinson, 63 Hun, 569, 18 N. Y. Supp. 541. The testimony of the plaintiff adds little if any force to the recital contained in the instrument. She testified that she had had money transactions with the deceased, and that, in the final conversation with her, the deceased spoke of "the subject of her feeling that she owed me—of her owing me money—had been discussed several times before; indeed frequently, because it was a debt." In a letter to the sister after the death of the deceased she speaks of it as a gift which the deceased "kindly called a personal obligation." The daughter of the plaintiff testified that she had a conversation with the deceased, in which the deceased upbraided her for not paying back the loan upon the note which she had given, and the witness said, "You need not make such a fuss about that one thousand dollars; you lost $3,000 of my mother's"; and she said, "That has nothing whatever to do with that; that is between thy mother and myself." If we eliminate the declaration of the plaintiff that the deceased owed her a debt, then we have nothing in the oral testimony or in the recital of the instrument to establish that there at any time existed a legal, enforceable obligation against the deceased in favor of the plaintiff, or that the facts were of such a character as would estop the deceased from denying her legal obligation for the payment of the money. The statement of the plaintiff that there existed a debt was subject, as we have already observed, to the scrutiny of the jury; and the daughter's testimony, by reason of the relationship, was also subject to the same scrutiny; but, if not, her statement did not show the requisite facts from which could be found consideration for the promise to pay. Undoubtedly this testimony of a recognition of

some sort of liability was entitled to consideration in support of the presumption raised by the express promise to pay contained in the instrument; but this was not conclusive, and, like the question of execution and delivery, was to be determined based upon a consideration of the testimony offered by the defendant and all of the circumstances disclosed by the evidence arising out of the surroundings and the relation of the parties. So considered, we think a question of fact was fairly presented for the determination of the jury as to whether the instrument was executed and delivered as the act of the deceased, and whether the same was founded upon a consideration sufficient to support it.

If these views are correct, it follows that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

All concur, except VAN BRUNT, P. J., who dissents.