THE FARMERS' LOAN AND TRUST COMPANY, as Trustee under a
Deed of Trust Dated February 3, 1920, Made by HELEN C.
BOSTWICK, for the Benefit of HELEN C. BOSTWICK and Remain-
dermen, Respondent, *v.* EGERTON L. WINTHROP, JR., as Executor,
etc., of EVELYN BOSTWICK VORONOFF, Deceased, and Others,
Appellants, Impleaded with THE FARMERS' LOAN AND TRUST
COMPANY, as Executor, etc., of HELEN C. BOSTWICK, Deceased,
Defendant.

First Department, December 14, 1923.

Trusts — judicial settlement of trustee's account — trust created by
donor provided for payment of income to herself for life and after her
death to named beneficiaries — donor gave powers of attorney to trustee
to receive property which might be awarded to her under another trust
and to apply same to increase principal — after donor's death trustee,
who is also executor of donor, received securities awarded to donor
under other trust — securities received after death of donor did not
belong to trust estate — powers of attorney did not effect absolute
gift in trust of securities received after donor's death nor did they estab-
lish equitable assignment — power of attorney was not coupled with
interest and irrevocable — donor did not declare trust by powers of
attorney and letter to trustee — taxation — Federal estate tax — provision
in will directing payment of inheritance taxes does not impose on general
estate Federal estate tax against trust — trust fund is chargeable
with Federal estate tax and executor should be reimbursed for tax paid
on account of trust fund — trust fund properly charged with State
inheritance taxes.

The donor of a trust created for her own benefit provided for the payment of
the income to herself for life and after her death to certain beneficiaries. She
also provided for the privilege from time to time during the continuance of the
trust of delivering to the trustee additional property to be held under the terms
of the trust and of withdrawing a part or the whole of the trust property. On
the day that the trust was created, she executed two powers of attorney to the
trustee, one of which authorized the trustee to receive any and all cash, shares
of stock and other property to which she might be entitled under a decree or
order to be entered in a proceeding in the Surrogate's Court settling the accounts
of a trustee under another trust of which the donor was a beneficiary and the
other authorized the trustee to sell for her and transfer any and all shares of stock
then or thereafter standing in her name. Coincident with the delivery of the
powers of attorney she delivered a letter to the trustee authorizing it to transfer
such securities and property which it might receive to itself as trustee under the
trust agreement. After the death of the donor the trustee, who is also executor
of the donor, received certain securities from the trustee of the trust of which
the donor was a beneficiary.

*Held*, that the securities received after the death of the donor did not pass to the
trust estate created by her;

That the powers of attorney did not operate as an absolute gift of the securities
received after the donor's death, since there was no delivery of those securities
prior to her death;

That said powers of attorney and the letter delivered to the trustee did not constitute an equitable assignment of the securities received by the trustee after the donor's death, since the donor retained control over the securities and could have collected them, and for the further reason that there was no valuable consideration upon which an equitable assignment could be based;

That the powers of attorney were not coupled with an interest so as to make them irrevocable and unaffected by the death of the donor, since the sole interest which the trustee had in the transaction was merely to act in its business capacity as an executor of the trust and to receive its compensation for the service thus rendered, which is not a sufficient interest to make a power irrevocable during the life of the maker, nor to make it of sufficient force to survive her death;

That the trust agreement, the powers of attorney and the letter did not constitute a declaration of trust, as to the securities which were received after the death of the donor, which a court of equity will enforce.

The direction in the will of the donor that the executor should pay all inheritance taxes out of her general estate is not a specific direction that the executor shall pay from the general estate the Federal estate tax arising on the transfer of the trust fund at her death, and that portion of the tax is chargeable against the trust estate and the executor should be reimbursed from the trust estate to the amount of the tax paid on behalf of the trust fund.

Likewise, the trust fund is chargeable with State inheritance taxes based on the value of the trust property.

CLARKE, P. J., dissents, with memorandum; FINCH, J., dissents, with opinion.

APPEAL by the defendants, Egerton L. Winthrop, Jr., as executor, etc., and others, from portions of a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on or about the 28th day of August, 1922, upon the report of a referee appointed to hear and determine in an action brought by the plaintiff for the judicial settlement of its account.

*Winthrop & Stimson* [*Frederick W. Stelle* of counsel; *Henry L. Steitz* and *Arthur E. Pettit* with him on the brief], for the appellant Egerton L. Winthrop, Jr., as executor, etc.

*Charles S. McVeigh* of counsel, for the appellant Marion Carstairs de Pret.

*Hall Park McCullough*, guardian *ad litem* [*John W. Davis* of counsel; *Edward R. Greene* with him on the brief], for the appellants Francis Francis, Jr., and another.

*Seacord, Ritchie & Young* [*Albert Ritchie* of counsel], for the appellants New Rochelle Trust Company and another, general guardians of Bostwick infants.

*Lawrence Atterbury*, attorney [*Charles Green Smith* of counsel], for the appellants Dorothy S. Bostwick and another, and guardian *ad litem* for the appellants Lillian S. Bostwick and others.

*Geller, Rolston & Blanc* [*Charles Angulo* of counsel], for the respondent.

McAvoy, J.:

On February 3, 1920, Helen C. Bostwick made, executed and delivered to the Farmers' Loan and Trust Company, as trustee, a deed of trust, by which she gave to the trustee the sum of $5,000, and provided for the privilege from time to time during the continuance of the trust of delivering to the trustee additional property to be held by it under the terms of the trust. She also reserved the right from time to time to withdraw from the trust created by the deed a part or the whole of the property at any time constituting the trust. The provisions of this deed required that the income from the trust fund was to be paid to the settlor during her lifetime, and on her death the principal was to be divided into two equal parts, one part to be divided into so many equal shares that there should be one share for each of the survivors of the five children of Albert C. Bostwick, who was a deceased son of the donor. Each of these shares, it was provided, was to be held in trust for each of said children during his or her lifetime, the income to be applied to the use of such child with a provision that during minority the income should be accumulated for the benefit of the minor, and upon the death of each child the trustee was to transfer and pay over and distribute the principal of the trust fund held for each child among the surviving issue of the child; and if there was no issue, the remainder was to go to surviving brothers and sisters. The other part of the trust fund was required to be subdivided into so many equal shares that there should be one share for each of the survivors of the donor's daughter, Fannie Evelyn, and her three children, these shares to be held in trust for each of them, the income to be paid to each during his or her life, with provision for accumulation of the income for the minors; and on the death of the daughter, Fannie Evelyn, her share was to be divided among her children, and on the death of any one of her children, the share of such deceased child was to be divided among his issue, with the provision that, if there were no issue, the share of each child so dying without issue should be divided among surviving brothers and sisters. At the time the deed of trust was delivered, the donor also executed and delivered a power of attorney, dated the same day, which authorized the plaintiff, the Farmers' Loan and Trust Company, as attorney, to collect and receive any and all cash, shares of stock or other property to which she might be entitled under any decree or order to be entered in a proceeding in the Surrogate's Court entitled: " In the Matter of The Judicial Settlement of the Account of Proceedings of United States Trust Company of New York, as Trustee of a trust created by Jabez A. Bostwick, under subdivision 2 of Paragraph Fourth of his Will."

On the same date Helen C. Bostwick delivered another power of attorney to the Farmers' Loan and Trust Company, by which she made the Farmers' Loan and Trust Company her attorney to sell for her and transfer any and all shares of stock then or thereafter standing in her name. Coincident therewith she delivered a letter addressed to the Farmers' Loan and Trust Company which reads:

" *February* 3, 1920.

" THE FARMERS' LOAN AND TRUST COMPANY,

" 22 William Street,

" New York, N. Y.:

" GENTLEMEN.— I hand you herewith two powers of attorney; one in the matter of the judicial settlement of the account of the United States Trust Company of New York, as trustee, etc., and the other an authority to sell and transfer stocks and bonds, etc.

" My desire is and I hereby authorize you to receive from the United States Trust Company of New York all securities and property coming to me under the decree or order on the settlement of its account and to transfer such securities and property to yourself as trustee under agreement of trust bearing even date herewith executed by me to you. In your discretion you may transfer any of said securities into the name of a nominee instead of your own name.          Yours very truly,

" HELEN C. BOSTWICK."

When these four instruments were executed, the United States Trust Company, which was the trustee under the will of Jabez A. Bostwick, the husband of Helen C. Bostwick, had accounted in the Surrogate's Court for its acts as trustee, and there were stocks and other property to which the maker of these instruments was entitled on such accounting, she having been entitled to receive during her life income under the trust, and an accumulation of stock dividends applicable to her share having come about. When these instruments were made in February, 1920, no decree had been entered; but subsequently on March sixteenth of that year a decree on that accounting was made. On April 27, 1920, the Farmers' Loan and Trust Company sent one of its officers, an assistant secretary, to the office of the United States Trust Company with the power of attorney and a letter which introduced this officer, and stated that he was authorized to receive such securities as were ready for delivery to the Farmers' Loan and Trust Company for the account of Mrs. Helen C. Bostwick. Certain securities were delivered to him, which the plaintiff accounts for in this action as part of the trust estate. On the night of that day, April 27, 1920, Mrs. Bostwick, the donor, died. She left

a will in which the Farmers' Loan and Trust Company was appointed as executor, and that company has qualified as such executor under letters testamentary.  In July, 1920, the United States Trust Company delivered to the Farmers' Loan and Trust Company, as executor of the will of the donor, Helen C. Bostwick, the remaining securities in its hands belonging to Mrs. Bostwick, and took a receipt therefor.

The children of Albert C. Bostwick object to the account of the plaintiff trust company on the ground that the plaintiff has not accounted for all the trust fund, since it omitted to include in its account as part thereof the securities delivered to the plaintiff as executor of Mrs. Bostwick on July 13, 1920, and which securities the plaintiff received and receipted for as executor under Mrs. Bostwick's will.  In this will the testatrix gave one-fourth of her residuary estate in trust for the children of Albert C. Bostwick, her deceased son; and three-fourths of the residuary estate she bequeathed in trust for the children of her daughter, Madame Voronoff.  By this disposition under the will, the children of Albert C. Bostwick will not take so much of the estate of their grandmother as the children of Madame Voronoff, his sister, will take. But their shares will be considerably augmented if the property delivered to the Farmers' Loan and Trust Company on July 13, 1920, should be taken from the executor of the estate and paid into the fund under the deed of trust made February 3, 1920. The controversy, then, is as to the title of the property which was delivered on July 13, 1920, by the United States Trust Company to the Farmers' Loan and Trust Company, the executor of the will. There is another point also litigated which has to do with the estate's reimbursement for the payments of sums of money by the Farmers' Loan and Trust Company, as executor of Mrs. Bostwick's will, for the Federal estate tax and for various State inheritance and succession taxes against the trust fund under the trust deed.  The children of the testator's daughter, Madame Voronoff, claim that the executor should be reimbursed by the trustee under the trust deed for such payments so made on account of the trust fund, and object to plaintiff's account on the ground that reimbursement should show in the account.  The children of the son, Albert C. Bostwick, contend that no reimbursement is required.

The issues were referred to a referee to hear and determine and to take and state the account, and the primary questions to be decided by him were:  Did the property delivered on July 13, 1920, by the United States Trust Company to the plaintiff, the executor of Mrs. Bostwick's will, belong to the trust fund under the trust

deed, or was there a failure of the gift attempted to be made by her under this deed and these powers and letter before described, so that what was left of the fund at her death in the hands of the United States Trust Company fell into her residuary estate? And the second point for decision may be stated in this query: Should the plaintiff as trustee under the trust deed reimburse the executor of Mrs. Bostwick's will for the payments made by it on account of the trust fund under the trust deed for Federal estate tax and the inheritance and succession taxes levied by the various States in which property of the decedent was taxable? The decision of the referee finds that the property received by the executor of Mrs. Bostwick's will on July 13, 1920, had been impressed with a trust and was a part of the trust fund and should be added to it; and as to the Federal estate tax paid by the executor on account of the trust estate, the referee found that it should have been paid by the executor, and that no reimbursement could be had therefor. As to the State inheritance taxes levied by the various States and paid by the executor on account of taxes against the trust fund, the decision of the referee was that the trustee should reimburse the executor for payments made on these inheritance taxes of the various States.

The children of Madame Voronoff and the executor of her will appeal from the judgment in so far as it decrees that the property delivered by the United States Trust Company to the Farmers' Loan and Trust Company on July 13, 1920, shall be added to the trust fund under the trust deed, and from so much of the judgment as directs that no reimbursement out of the trust fund can be made to the executor under Mrs. Bostwick's will for the moneys paid by it for the Federal estate tax.

The Albert C. Bostwick children appeal from the judgment in so far as it decrees that the executor should be reimbursed for the moneys paid by it for the inheritance taxes levied by the various States upon the trust fund. The basic ground of the claim of the children of Albert C. Bostwick that the securities in dispute belong to the trust under the instrument of February 3, 1920, is that the two powers of attorney, executed and delivered on that date by Mrs. Bostwick to the Farmers' Loan and Trust Company, and the letter of the same date to that company, demonstrate that she made an absolute completed gift in trust of the property then lodged with the United States Trust Company, and which belonged to her; and if this be not found, it is contended that in any event the execution and delivery of these papers constitute an equitable assignment to the trustee of the properties in question; and if neither of these propositions is legally or equitably tenable, then the

trust company, as trustee, had a power of attorney coupled with an interest, so that the power of attorney was irrevocable and, therefore, survived the death of Mrs. Bostwick; and further there is urged the proposition that the four papers constitute a declaration of trust for the beneficiaries therein named.

The papers themselves do not contain present words of assignment in respect to the securities which were on deposit with the United States Trust Company. The deed of trust does not contain any reference in specific statement or in general phrase covering these securities. Their existence is related to future acquirement by the decree to be entered in the Jabez A. Bostwick estate account. There is an expression of intention of the maker of these papers that the securities then about to be held for her by the United States Trust Company should be added to the trust, and which authorizes that they be so added. The contention that there was a gift cannot be maintained, unless there be proven an intention to make the gift and a change of possession of the property in accordance with the intent which would make the gift complete. An intention, however manifest, cannot constitute a gift, unless the intent is carried out by the completion of the gift through delivery, either actual, constructive, or what is sometimes called symbolic.

As to the property which on April 27, 1920, was acquired by the trustee through these instruments, there was a complete gift; but as to the balance the donor cannot be said to have parted with the possession of the remainder of the securities so as to make their gift a complete one. The donor cannot be said to have divested herself absolutely and irrevocably of title, dominion and control of the subject-matter of the trust until there was a delivery, actual or constructive, operating to divest her of such possession and dominion over the subject-matter; and though the intention is established by most satisfactory evidence, a completed gift cannot be found to have been here made out. Nor can the title to the fund be deemed to have been transferred to the Farmers' Loan and Trust Company, as trustee, upon the theory that, because the trustee had the two powers of attorney and the letter of February 3, 1920, which instruments were apt for completing a transfer to it of the fund, an equitable assignment of the securities constituting the fund was effected. An equitable assignment does not exist where an assignor retains any control over the fund, or any authority to collect, or any power to revoke; and since Mrs. Bostwick retained the control over the securities and could have collected from the United States Trust Company any of those securities which remained with it, through a revocation of the instruments which were committed to the Farmers' Loan and Trust Company,

a valid equitable assignment cannot be deemed to have been executed. Besides, the doctrine is well established that an equitable assignment must be based upon a valuable consideration. Here the intent was solely to make a gift in trust for the benefit of the donor's child and grandchildren. When the holder of what is claimed to be an equitable assignment has parted with nothing and so loses nothing by the application of ordinary legal rules, the help of an equitable doctrine will not intervene. A voluntary promise to make a gift is *nudum pactum* and cannot be enforced either at law or in equity.

Referring now to the question as to whether these powers were so coupled with an interest in the donee of the trust that they were irrevocable and did not cease at the death of the donor, we find that the sole interest which the donee of the trust had in the transaction was merely to act in its business capacity as an executor of the trust and to receive its compensation for the services thus rendered. This interest has been universally considered as not sufficient to make a power irrevocable during the life of the maker, nor to make it of sufficient force to survive the death of the donor of the power. Generally a power may be revoked; but where the donee has an interest in the subject-matter of the power, it is irrevocable. There was no interest in the trustee in the subject-matter of the power here. The deed of trust did not grant to the trustee any title in the disputed subject-matter of the proposed trust. It was merely constituted as an attorney to collect and receive the securities, and upon its acting in that capacity, to turn them over to itself as trustee to be added to the trust fund. The power contains no grant of an interest which would amount to title in the securities, so that the power can be said to be coupled with an interest. The interest in the subject-matter of the power, which gives it irrevocability, must be such an interest that the agent is constituted with the right to exercise the power in his own name and as his own act. The interest of the Farmers' Loan and Trust Company in the securities which were lodged with the United States Trust Company would only begin when the power to collect and transfer ended, and then only through the terms of the letter of February 3, 1920. The other method by which it is claimed a right to the trust fund became vested in the Farmers' Loan and Trust Company for the Bostwick children, is that the four papers in question amounted to a declaration of trust which equity should carry out. Such a declaratory trust must be established by one of the following methods, if it is to be enforced by decree in Chancery:

1. The donor must hold the legal title to the subject-matter

of the trust and must declare that he holds the property in trust;

2. The title to the subject-matter of the trust must be transferred by the donor to the trustee and the donor must declare that the trustee holds the property in trust;

3. The title to the property must already be in the trustee and the donor must declare that the trustee holds the property in trust; or

4. The property must be in the possession of a third person and the donor must transfer the title of the property to the trustee and declare that the trustee holds it in trust. (*Wadd* v. *Hazelton*, 137 N. Y. 215.)

1. As to the first method in the case at bar, Mrs. Bostwick did not undertake or attempt to declare that she held this property in trust. She could not have done so, because she did not hold the property. The legal title to it was in the United States Trust Company of New York, as trustee.

2. No transfer of the title to the property from the donor to the trustee was made in any of these four papers. The title to the property remained in the United States Trust Company where it had theretofore been.

3. Mrs. Bostwick did not adopt the third method, because title to the property was not in the trustee, and never was transferred to the trustee.

4. Mrs. Bostwick did not transfer the property from the United States Trust Company, which held it, to the trustee under the deed of trust. She did not execute any papers running to the United States Trust Company, nor did her agent give the United States Trust Company notice of the trust or attempt to charge the property in the possession of the trust company with the trust. The only one of these four methods of establishing a declaratory trust which can be sustained without a valuable consideration, is the first method. All of the other three must import a consideration if a court of equity is to be asked to declare such a trust, for equity never interposes to perfect a defective gift or voluntary settlement made without consideration.

In the case of *Young* v. *Young* (80 N. Y. 422) the court said (on p. 437): " If this instrument had been founded upon a valuable consideration, equity might have interfered and effectuated its intent by compelling the execution of a declaration of trust, or by charging the bonds, while in his hands, with a trust in favor of the equitable owner (*Day* v. *Roth*, 18 N. Y. 448). But it is well settled that equity will not interpose to perfect a defective gift or voluntary settlement made without consideration. If legally made, it will be upheld, but it must stand as made, or not at all. When,

therefore, it is found that the gift which the deceased attempted to make failed to take effect for want of delivery, or a sufficient transfer, and it is sought to supply this defect and carry out the intent of the donor by declaring a trust which he did not himself declare, we are encountered by the rule above referred to (Story's Eq. 706, 787, 793, b.c.d.; *Antrobus* v. *Smith*, 12 Ves. 39, 43; *Edwards* v. *Jones*, 1 Myl. & Cr. 226; 7 Sim. 325; *Price* v. *Price*, 8 Eng. L. and Eq. 281; *Hughes* v. *Stubbs*, 1 Hare, 476). It is established as unquestionable law that a court of equity cannot by its authority render that gift perfect which the donor has left imperfect, and cannot convert an imperfect gift into a declaration of trust, merely on account of that imperfection. * * * These positions are sustained by many authorities. To create a trust, the acts or words relied upon must be unequivocal, implying that the person holds the property as trustee for another (*Martin* v. *Funk*, 75 N. Y. 134, per CHURCH, Ch. J.). Though it is not necessary that the declaration of trust be in terms explicit, the donor must have evinced by acts which admit of no other interpretation, that such legal right as he retains, is held by him as trustee for the donee. * * * The settler must transfer the property to a trustee or declare that he holds it himself in trust."

See, also, *Matter of Gurlitz* (105 Misc. Rep. 30, 37), where the court said: " Under the authorities just cited, an imperfect gift cannot be enforced where there is no consideration, nor can it be enforced as a declaration of a trust. To convert an imperfect gift into a declaration of trust, where such was not the intention, is not within the realm of even so benign a system of jurisprudence as equity." (*Hickok* v. *Bunting*, 67 App. Div. 560; *Matter of Crawford*, 113 N. Y. 560.)

The securities forming the disputed fund should remain in the hands of the Farmers' Loan and Trust Company, as executor of Mrs. Bostwick's estate, and the judgment of the court below should be reversed in this respect and a judgment entered making this direction as to this fund.

The next matter to be considered is the question of the payment of inheritance and Federal estate taxes imposed on the estate and paid by the executor.

We think the direction in respect to inheritance taxes in the 1st paragraph of the will of Mrs. Bostwick related only to the estate under her will which came into the hands of the executor.

To determine whether Mrs. Bostwick intended that this tax shall be paid out of her estate, we must find such intention clearly expressed in the will. The expression used, and upon which reliance is placed for upholding the judgment as to Federal estate tax, is:

" *First,* I direct that all my just debts and funeral expenses be paid as soon as possible after my decease, and that all inheritance taxes be paid out of my general estate."

The ordinary common sense construction of this provision is that the testatrix intended that the legatees under her will should take their legacies free from tax. Similar expressions are very common in wills. To make the estate and inheritance taxes against the trust fund come within this provision of the will, it is necessary to assume that she had such taxes in mind when she drew her will. The words " all inheritance taxes " would seem to relate to all inheritance taxes assessed against the property passing under the will. It seems a forced construction to include taxes against property which did not pass under her will.

The direction in paragraph numbered " *First,*" which includes debts, funeral expenses and inheritance taxes; shows that Mrs. Bostwick had in mind that the payments to be made by the executor out of her residuary estate were those items which the executor would have to pay in order to get into its hands the assets of the estate for administration and in order to distribute and account, and which necessarily would exclude payments in respect to funds held by trustees under trusts created by Mrs. Bostwick before her death, which have no connection with her estate, so as to be administered by the executor of her will.

Although the statutes of the United States and various States provide that the executor of an estate shall pay taxes against property covered by a trust deed which in the purview of such statutes takes effect in possession or enjoyment at the time of the death of the testatrix, these statutes in no way make the property covered by such trust deeds a part of the estate of the decedent, nor do they make such property to be considered in the administration of the estate of such decedent, nor do they make the beneficiaries under the trust deed in any sense beneficiaries under the will, although for the purpose of the tax they may include such property in the gross estate. These provisions for payment in the first instance by an executor are primarily rules of administration and have no force in a question of contribution or reimbursement.

We think it too clear to need argument that paragraph " *First* " of the will was made for the benefit of the legatees under the will, and not for the benefit of the beneficiaries under the trust deeds.

The executor of the will of Mrs. Bostwick should be reimbursed for the Federal estate tax paid by it in respect to the trust fund under the trust deed in this action.

The referee found that there should be no reimbursement to

the executor for the payments made for the Federal estate tax on the trust fund. To sustain his position, he relies largely in his opinion on the case of *Matter of Hamlin* (226 N. Y. 407). The decision in the *Hamlin* case was to the effect that the ·Federal estate tax, under the Federal Estate Tax Act of 1916, as contained in the Federal Revenue Act of 1916 (39 U. S. Stat. at Large, 777, chap. 463, tit. 2), was in no sense a legacy tax, but was an estate tax; and the court in that case held that it was payable out of the residue of the estate and was not to be apportioned to the various legatees under the Hamlin will. There was not involved in that case any trust fund outside of the estate which came into the hands of the executor.

Section 402 of the Federal Revenue Act of 1918 (40 U. S. Stat. at Large, 1097), which is contained in title 4 of said act (Id. 1096 *et seq.*), known as the Federal Estate Tax Act of 1918, provides that the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property wherever situated, including, among other things, any interest therein of which the decedent had at any time made any transfer, or with respect to which he had at any time created a trust in contemplation of or intended to take effect in possession or enjoyment at or after his death. Under this provision the trust fund in question would be included, because it took effect at the date of death of Mrs. Bostwick, she having retained the income therefrom to the time of her death. Although by the act the trust fund is made a part of the estate, in no sense is it any part of the estate of the testatrix over which the executor has control. It is made a part of the gross estate merely by reason. of the statute and in order that the tax may be collected. Such trust fund is not analogous to a legacy under the will. It becomes a part of the gross estate merely by direction of the statute and in order that the tax may be collected.

The scheme of the Federal Estate Tax Act of 1918, wherein all of the sections herein cited are likewise contained, is to include in one sum the entire estate, so that in fixing the tax the higher percentages may be obtained. If there was a separate tax against the various portions making up the gross estate, the tax would of course be less, because the higher percentages would not be reached.

It seems to us that section 408 of the Federal Revenue Act of 1918 contemplates not only reimbursement and contribution against the executor, but that in an instance of this kind it gives the executor a similar right. Section 408 of the Federal Revenue Act of 1918 (40 U. S. Stat. at Large, 1100) reads in part: " If the tax or any part thereof is paid by, or collected out of that part of the estate passing to or in the possession of, any person other than the

executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being the purpose and intent of this title that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution.''

A residuary legatee under a will, by virtue of the law laid down in the *Hamlin* case, is obliged to pay the entire Federal estate tax without reimbursement against any legatee; but this rule does not seem logically to apply to a trust fund which is outside of the will, and over which the testator at his death had no control, and of which his executor never takes possession. While for the purpose of the tax this trust fund is added to the estate in making up its total sum to be assessed, after that has been done and the executor has paid the tax, it does not seem that Congress had any interest as to whether or not the executor of an estate should be reimbursed for a tax on property which is not a part of the estate of which he had possession. The rule in the *Hamlin* case is not decisive of the situation here. The Federal statute merely provides that the tax shall be paid by the executor, and that if the executor should not pay the tax, the United States may recover the tax from any part of the entire estate, and the tax by the statute is made a lien on all parts of the entire estate. (See 40 U. S. Stat. at Large, 1099–1101, §§ 404, 406–409.) The Federal statute is concerned solely with the assessment and the payment of the tax on the total estate.

Section 409 of the Federal Revenue Act of 1918 (40 U. S. Stat. at Large, 1100, 1101) provides that: " If (a) the decedent makes a transfer of, or creates a trust with respect to, any property in contemplation of or intended to take effect in possession or enjoyment at or after his death  *  *  *  and if in either case the tax in respect thereto is not paid when due, then the transferee, trustee, or beneficiary shall be personally liable for such tax  *  *  *."

This enactment evidences a legislative intent to make the corpus of the trust ultimately liable for the tax, even though the primary payment may be exacted from an executor under a will. The design of the government is to protect its own interests in the operation of the law and in its construction; and it is not concerned with the questions involving the rights of the respective beneficiaries as to contribution or reimbursement. For example, in the Federal Estate Tax Regulations 63 (1922 ed.), article 85, which relates to

section 408 of the Federal Revenue Act of 1921 (42 U. S. Stat. at Large, 282), re-enacting so far as material section 408 of the Federal Revenue Act of 1918 (40 id. 1100), the rule runs: "The Commissioner can not be required to apportion the tax among the persons liable, nor to enforce any right to reimbursement or contribution. For example, where a transfer has been made in contemplation of death, the Commissioner may hold both the executor and the transferee liable for the tax with respect to the property transferred. In such case, if the tax is paid by the executor, he may not look to the Commissioner for relief by refund of part of the tax."

This rule was also a part of article 98 of Federal Estate Tax Regulations 37 (Revised Jan. 1921), relating to the Federal Revenue Act of 1918.

The Federal statutes do not under this regulation attempt to deprive an executor of a right of obtaining repayment of the tax paid for account of some one not a beneficiary under the will, but who derives an interest from the testator's estate which is taxable; but a claim of the executor against *the government* for apportionment will not be enforced.

There is a somewhat analogous case in *Hampton* v. *Hampton* (188 Ky. 199; 221 S. W. Rep. 496), decided in the Court of Appeals of Kentucky. In this case, where the decedent died intestate, the question arose whether the Federal estate tax should be paid out of the personalty of the estate, thus permitting a very large amount of real property to escape the tax, or whether it should be apportioned between the personalty and the realty; and the court said it should be apportioned. The court said that the obligation of the personal representative to pay the tax is a mere rule of administration to insure its payment, and does not in any way affect the rights of the heirs and distributees as among themselves.

Article 99 of Federal Estate Tax Regulations 63 (1922 ed.), provides: "The executor is personally liable for the payment of the estate tax to the amount of the full value of the assets of the estate which have at any time come into his hands." A similar provision is found in article 113 of Federal Estate Tax Regulations 37 (Revised Jan. 1921), relating to the Federal Revenue Act of 1918.

It must then be undeniable that, if the executor had but a small estate and there was a trust which was a part of the gross estate, which trust was so large that the amount of the tax against it would be more than the estate in the hands of the executor, the

commissioner would look directly to the trust fund under the power to collect from either executor or transferee of the trust.

We think that the interpretation of section 408 of the Federal Revenue Act of 1918 (40 U. S. Stat. at Large, 1100) made by the referee is not justified by the language of the Federal Estate Tax Act of 1918 and the various Federal Estate Tax Regulations in respect thereto, especially Federal Estate Tax Regulations 63 (1922 ed.), article 85, above quoted, which recognizes an apportionment of the tax among the various persons liable therefor.

Whether or not the executor of a will may obtain reimbursement for any Federal estate tax paid in respect of a trust fund created by a testator in contemplation of death, is undecided, except that in the case of *Curley* v. *Tait* (276 Fed. Rep. 840) there is a dictum to the effect that a trust fund included in the gross estate is not subject to contribution towards the tax; but in that case the court held that the provision of the Federal Revenue Act of 1916 (39 U. S. Stat. at Large, 777, chap. 463, tit. 2; Id. 777, § 202) was not retroactive as to a trust created before the act took effect, and that there was no tax leviable in respect of such trust fund.

In the case of *Shwab* v. *Doyle* (258 U. S. 529), decided by the Supreme Court of the United States in May, 1922, it was held that the Federal Estate Tax Act of 1916, as contained in the Federal Revenue Act of 1916 (*supra*), was not retroactive as to a trust fund created before the date of its enactment. In the opinion of the Circuit Court of Appeals in that case (269 Fed. Rep. 321) there is a statement to the effect that the beneficiaries under the trust cannot be compelled to reimburse the executor on account of Federal estate tax paid in respect of the trust fund. The decision of the Circuit Court of Appeals to the effect that the act was retroactive in respect to said trust fund was reversed by the Supreme Court of the United States.

But neither of these cases gives any reasons for the dicta in respect to this point. There has been no authoritative ruling by any court on this question.

An instance of the working of an opposite rule shows the inequity of it. If, perchance, a testator had made a trust under which he retained a life estate with remainder to children by his first wife, and after the making of the deed he remarried, having children by the second marriage, and because of provision by the trust for the children by the first marriage, he left by will all his estate to his children by his second marriage, his executor, if no reimbursement can be ordered, would be obliged to pay the estate tax on the trust fund, and the amount of the tax might be so large as to diminish substantially the property which would pass under

the will, while the beneficiaries under the trust would be amenable to no impost whatever, although the sum of their trust is a part of the taxable sum.

Since Mrs. Bostwick by her will provided that all inheritance taxes should be paid out of her general estate, and as we find that the true meaning of the clause so providing is that it must relate only to the estate under her will, she must have intended that the trustee of any trust deeds which she may have made during her life should pay their own proportions of the Federal estate tax. She is presumed to have known the law, and to have known that the trust funds under these trusts would be added to the entire estate to make up the gross estate on which the Federal estate tax would be assessed; and knowing this, she must have had in mind that the Federal estate tax would be levied, not only upon the property she left in her estate, but on the funds under the trust deeds.

An express provision for the payment out of her own estate of the inheritance taxes in respect thereto evidences a design that no greater burden for the estate tax should be added to the property she left by will. The trust funds should in this view pay their shares of the Federal estate tax.

Since we hold that the provision of the will for the payment of inheritance taxes applies only to property passing by the will, the payment by way of reimbursement to the executor of the various inheritance taxes levied by the States was properly directed, as these obviously are based upon the right to succeed to the funds and are in no sense a levy or excise on the whole fund, and the parties who take ought to pay as the law contemplates.

These conclusions lead to the determination that the judgment below should be reversed in so far as it decrees that the fund amounting to $1,470,473.70, held by the Farmers' Loan and Trust Company, as executor of the will of Helen C. Bostwick in a separate account, should be added to the trust fund herein; and in so far as it decrees that the Federal estate tax against the trust fund in this action was properly payable by the executor of the will of Helen C. Bostwick, and not by the plaintiff as trustee from the trust fund; and affirmed in so far as it directs payments from the trust fund of the various State inheritance and transfer taxes.

DOWLING and MARTIN, JJ., concur; CLARKE, P. J., and FINCH, J., dissent.

CLARKE, P. J. (dissenting):

I concur in the dissent. The obvious intent of the settlor to include in the trust all of the securities decreed by the Surrogate's Court to belong to her is not to be defeated by the accident that

when demand was made on the United States Trust Company, the custodian thereof, only half of said securities were ready for immediate physical delivery. If there be such a thing as a symbolical delivery, it existed in this case.

FINCH, J. (dissenting):

The deed of trust, powers of attorney and letter referred to in the majority opinion should all be considered together, and so considered, they clearly show a declaration on the part of Mrs. Bostwick to give to the trustee under said deed of trust for the purposes thereof, *all* the property to which Mrs. Bostwick was entitled under a decree about to be entered in accounting proceedings by the United States Trust Company, as trustee of a trust created by Mrs. Bostwick's husband, which proceedings were then pending in the Surrogate's Court of New York county. Such decree was duly entered prior to the death of Mrs. Bostwick, and the property in question exactly ascertained. Also prior to Mrs. Bostwick's death the plaintiff duly presented to the United States Trust Company, custodian of the securities, its authorization to receive the same, and demanded possession thereof. Said custodian recognized the right of the plaintiff to receive *all* the securities, and delivered a portion thereof to it. Concededly there was a valid declaration of trust as to the securities so delivered. As to the remainder of the securities, it is impossible to find a valid ground of distinction so as to prevent them from being a part of the same trust. The declaration of trust by Mrs. Bostwick was one and the same, the notice to the United States Trust Company was one and the same, and there was a partial delivery under such notice. The mere fact that for some reason not disclosed in the record, but having nothing to do with the declaration made by Mrs. Bostwick or the right of the plaintiff to receive the securities, all of the securities were not delivered, could not change the rights of the parties as to the undelivered securities. The powers of attorney delivered to the trustee in no way qualified the trust, but were merely delivered as a means for obtaining physical possession of the securities. Even assuming that the powers of attorney were revoked by the death of Mrs. Bostwick, they were only revoked as powers of attorney, leaving the declaration of trust unaffected. In other words, the powers of attorney are not necessary to the validity of the declaration of trust. Nor was a physical delivery of the property essential to the validity of the trust. Moreover, this court has even gone so far as to hold in a case where a delivery was necessary, that a symbolical delivery was sufficient (*Matter of Cohn*, 187 App. Div. 392). In that case

one Leopold Cohn gave to his wife a paper reading as follows: " I give this day to my wife, Sara K. Cohn, as a present for her (46) forty-sixth birthday, (500) five hundred shares of American Sumatra Tobacco Company common stock." The donor died six days after the delivery of the instrument. At the time of the gift he was the owner of 7,213 shares of the common stock of the American Sumatra Tobacco Company, but the stock was in the name and possession of his firm, and deposited in a safe deposit box which was in the name of and belonged to the firm. The court held that there was a symbolical delivery, saying: " The intention to make the birthday gift being conclusively established, the gift being evidenced by an instrument of gift executed and delivered to the donee　*　*　*　and the circumstances surrounding the making of the gift affording a reasonable and satisfactory excuse for not making actual delivery of the certificates at the time the gift was made, there was in my opinion a valid and effectual gift of the certificates mentioned in the instrument of gift."

When the plaintiff made due demand for the securities, pursuant to which there was a delivery of some of the securities, it is not too much to say that there was more of a symbolical delivery of all the securities than in the case last cited.

For the foregoing reasons the judgment should, in my opinion, in so far as it sustains the finding of the referee that the fund in question belongs to the trust estate, be affirmed.

Judgment reversed to the extent indicated in opinion and in other respects affirmed. Settle order on notice.