In the Matter of the Estate of MARY J. S. TAYLOR, Deceased.

EDWARD W. LARKIN, Appellant; BENJAMIN STARR et al., as Executors, Respondents.

(Argued May 27, 1929; decided July 11, 1929.)

*Joseph Besch, Jr.,* and *L. R. Chase* for appellant. The two notes in question show upon their faces they are attempted testamentary gifts, and are consequently unenforcible. (*Matter of James,* 146 N. Y. 78; *Whitaker* v. *Whitaker,* 52 N. Y. 368; *Dodge* v. *Pond,* 23 N. Y. 69; *Goshen Turnpike Co.* v. *Hurtig,* 9 Johns. 217; *Hatcher* v. *Lewis,* 4 Rand. [Va.] 152.)

*Henry D. Lucey* for respondents. The $500 note to the Preble church was a legal binding obligation and the executors acted properly in paying it. (*Keuka College* v. *Ray,* 167 N. Y. 96; *Allegheny College* v. *National Chautauqua County Bank,* 246 N. Y. 369; *Barnes* v. *Perine,* 12 N. Y. 18.) The appellant failed to prove that the executors acted negligently in paying the claim of the Homer Baptist Church. (*Matter of Fitz Patrick's Estate,* 206 N. Y. Supp. 496; *Matter of Warrin,* 56 App. Div. 414; *Beebe* v. *Prime,* 99 Misc. Rep. 668; *Matter of Dale,* 168 App. Div. 253.)

POUND, J. Mary Jane Sheldon Taylor, a resident of Cortland county, died on the 23d day of January, 1926, leaving a last will and testament and codicil thereto. Benjamin Starr and William G. Crandall were named in

the will and codicil as executors thereof. The will and codicil were duly admitted to probate by the Surrogate's Court of Cortland county on the 10th day of March, 1926.

On the 27th day of April, 1927, the executors presented to the Surrogate their petition asking for a decree finally and judicially settling their account and discharging them as executors. Upon the hearing of this petition the appellant, Edward W. Larkin, and Mary Ann Palmer, an incompetent, appeared and filed objections to three items of payment of money, for which the executors sought credit, viz.: An item of $6,000 paid as the principal sum due on a note given by decedent to the First Baptist Church of Homer, N. Y.; a further item of $434 for interest paid thereon; and a further item of $500 in payment of a note given by decedent to the Methodist Episcopal Church of Preble, N. Y. The two notes referred to are non-negotiable in form and read as follows:

" PREBLE, NEW YORK,
" $6000.00                            January 6, 1922.

" For value received I hereby promise to pay at my decease, to the First Baptist Church of Homer, New York, its successors or assigns the sum of Six Thousand and no /100 Dollars, without interest,  And I do hereby direct the executors named in my will and testament to pay the said sum of $6000.00 to the Trustees of said church, or to their successors, in office, in the due course of the settlement of my estate and I hereby direct that said debt shall draw interest at the legal rate from and after the date of my decease.

"M. JANE SHELDON TAYLOR."

January 6, 1922, is the date of the codicil of the will as well as the date of the $6,000 note.

" PREBLE, NEW YORK,
" $500.00                               July 7, 1917.

"At my decease, for value received, I hereby promise to pay to the Methodist Episcopal Church of Preble, Cort-

land County, New York, by whatsoever corporate or other name the same may be known or have a legal existence the sum of Five hundred and no /100 Dollars, without interest. It being my intention that the aforesaid sum shall be payable to the aforesaid church or society for the purpose of building its church edifice but that it shall not be payable to any other church or society in which the aforesaid church or society shall or may merge, and that in the event of the said church or society ceasing to have a legal existence, then this note shall become null and void.

" Mrs. M. JANE SHELDON TAYLOR."

The executors, during the course of their administration of the estate, were presented with claims based upon these notes. They paid them and now seek credit for such payments on their final accounting. The Homer church has not mingled the money paid to it with its general funds but holds the same in a certificate of deposit.

The objector-appellant was a legatee and one of the next of kin of the testatrix. The grounds of his objections to the allowance by the Surrogate of credit for the payments are: That the alleged notes were attempted testamentary gifts and hence void and unenforcible; that no consideration existed for the promise of the maker in the case of each note; and that the executors had been guilty of negligence in making the payments.

The objections came on for a hearing before the surrogate. At the close of the objectors' evidence, he held that a *prima facie* case had been made out although evidence tending to show lack of consideration was rejected. The executors being thus obliged to go on with the proofs, offered no evidence in their behalf as to the $6,000 note, and as to the $500 note they made proof simply that a new church edifice had been built at a time not specified and that the church had not merged with any other church or society.

Thereupon both parties rested. Later the Surrogate

made his decision. He directed a decree dismissing the objections on the grounds that there had been a failure of proof on the part of the objectors; failure to sustain the burden of proof under section 210 of the Surrogate's Court Act; that the evidence did not overcome the presumption of consideration flowing from the use of the words " for value received " in the notes; and that the executors had not been negligent in making the payments.

The assets of the estate amounted to about $10,000. The payment of the notes would absorb practically the entire estate after payment of necessary charges thereon.

Section 210 of the Surrogate's Court Act, which is relied on to sustain the decision below, provides:

" § 210. Effect of admission and allowance of claim or debt by representative. Whenever upon any accounting or judicial settlement of an account, the executor or administrator admits and allows a claim or debt against the deceased, other than his own claim, * * * the validity of such claim or debt shall be thereby established.

" When such a claim or debt has been so admitted or allowed, * * * any party adversely affected thereby may file objections thereto and may show that the claim or debt was fraudulently or negligently allowed, or paid. * * *."

This is a new section having its source in Laws of 1914, chapter 443. It makes the allowance or payment of a claim of some value and fixes its standing as a valid claim unless proof is made from which fraud, negligence or collusion may be inferred.

The primary question in the case is whether the notes were executed and delivered as gifts to take effect at death, or because of an indebtedness on the part of the testatrix to the several religious societies therein named. As attempted gifts they would be void. If sustained by a consideration they would be upheld. (*Dodge* v. *Pond*, 23 N. Y. 69, 78; *Whitaker* v. *Whitaker*, 52 N. Y. 368; *Matter of James*, 146 N. Y. 78, 94; *Dougherty* v. *Salt*, 227 N. Y. 200, 202.)

The executors have proceeded on the theory that as the two non-negotiable notes in question contain a recital of " value received," which implies that they were given for a consideration sufficient to support a simple contract (*California Packing Corp.* v. *Kelly S. & D. Co.*, 228 N. Y. 49), they were justified without further inquiry in drawing the conclusion that at some time value was given for the instruments by the payees; that they were not negligent in paying the notes on the advice of counsel, acting on this presumption, without further inquiry; and that they have thereby shifted to the objectors the burden of establishing the invalidity of the claims.

The duty of executors clearly does not permit them merely by allowing or paying claims against the estate without regard to their character to shift the burden of proof upon objectors. They are still bound to the exercise of proper care. They must act on satisfactory proofs that the claim is justly due. (Surrogate's Court Act, § 207.) What is satisfactory proof depends upon the nature of the claim. If its nature is equivocal or suspicious, payment may be withheld until the claim is tried. (Surrogate's Court Act, § 211.) The payees in both instruments in question are religious corporations and the notes are payable at death without interest. Obviously the transactions represented by the notes were not commercial transactions. But if a thing is to be done by the promisee, be it ever so small, this is a sufficient consideration to sustain the promise. Was there a promise on the part of the churches or either of them to do something in return for which the notes were given? (*Allegheny College* v. *Nat. Chautauqua Co. Bank*, 246 N. Y. 369.)

Outside of the recital of " value received " in the notes, the case is destitute of proof of consideration. No request to build a church edifice can be implied from the form of the $500 note payable to the Preble church. Nor can it be inferred that the church society was induced by the note

to preserve its legal existence. If either of these inferences could be drawn, it might be claimed that the note could be upheld under the doctrine of promissory estoppel. (*Allegheny College* v. *Nat. Chautauqua Co. Bank, supra.*) But for all that appears, aside from the recital of value received, the note was given as a conditional gift to the building fund. The instrument is equivocal in form. The inference of consideration from the recital of value received is in these circumstances slight. Possibly it may be effectually repelled by evidence of the circumstances surrounding the giving of the note. (*Dodge* v. *Pond, supra.*) Or it may appear that value was given by the church. A church was built at some time not specified and the church society has not merged with any other society. The question remains whether the church, after the note was given, altered its position to the knowledge of the promisor and in the reasonable belief that the promise would be kept. (*Allegheny College* v. *Nat. Chautauqua Co. Bank, supra.*) As to the $6,000 note to the Homer church no proof was offered of the facts surroundings its inception. While the words "value received" *prima facie* imply a consideration, for all that appears the note may be a gift in disguise. A reasonable suspicion is at least suggested by the form of the note and its execution contemporaneous with the execution of the codicil.

As the evidence of the notes themselves is not of sufficient weight and character conclusively to establish their validity, the question remains as to the duty of the executors to investigate before paying. While it cannot be said that any suspicion of fraud or bad faith in fact attached to the giving of the notes, the conclusion seems irresistible that the executors may not escape responsibility for inquiry into their validity by relying on the words "for value received." Reasonable diligence and intelligence on their part were called for. An elderly lady of modest means might desire to give her funds to religious corporations and it might be suggested to her that a form

of note would be a proper method of accomplishing the purpose, yet, with the best of intentions on the part of herself and her advisers, the notes might be invalid. The executors were under a duty to resist the payment of moral obligations which did not impose legal liability. The validity of the notes was legally questionable on their face. The executors made no investigation to ascertain why they were given. William G. Crandall, one of the executors, testified that the executors and their attorney had some discussion about the payment of the $6,000 note and that it was " okayed " by the attorney before they paid it, but he does not indicate what statements they made to their attorney on which his approval of such payment was based. That is not enough. Such evidence is meaningless unless we know what facts the executor stated to counsel when they asked his advice. Crandall, one of the executors, was one of the trustees of the Homer church and Starr, the other executor, was a member. They must have known whether the $6,000 note was given for a promise on the part of the church. Yet they chose to pay the note although its validity might have been litigated on the accounting without a shifting of the burden of proof under section 210 of the Surrogate's Court Act. They should have been indifferent as between the churches and the legatees.

The executors have failed to establish their freedom from negligence in paying the notes. It seems a reasonable and necessary inference from the evidence that the notes were paid without inquiry as to their true character in order to impose the burden of proof of their invalidity upon the objectors and that counsel advised their payment to accomplish that end. This is not the exercise of care and solicitude for the rights of all interested in the estate which the law imposes on the executors of a will.

The appellant should have an opportunity to offer evidence of lack of consideration to rebut the presumption arising from the words " for value received."

The order of the Appellate Division and the decree of the Surrogate's Court, so far as appealed from, should be reversed and a new hearing granted, with costs to abide the event.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.