ESTHER JACKSON PORTER, AS EXECUTRIX, AND RICHARD L. DAVISSON, AS SURVIVING EXECUTOR OF THE ESTATE OF WILLIAM H. PORTER, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 42815.   Promulgated June 30, 1931.

*Richard L. Davisson, Esq., Henry Mannix, Esq.,* and *E. J. Corcoran, Esq.,* for the petitioners.

*Lewis S. Pendleton, Esq.,* for the respondent.

1018

OPINION.

BLACK: The petitioners contend that the trust herein referred to as Trust No. 3, dated November 27, 1926, did not create any new trust nor revoke trusts designated herein as Trusts Nos. 1 and 2, and that, if it had any legal effect, it was merely to modify Trusts Nos. 1 and 2.

They further contend that if a new trust was created on November 27, 1926, by Trust No. 3, section 302 (c) is unconstitutional in so far as it provides that transfers made within two years prior to death shall be deemed to have been made in contemplation of death.

They insist that the pledges made by the decedent to the New North Country Community Hospital and Princeton University are proper deductions as claims against the estate under section 303 (a) (1) of the Revenue Act of 1926, or under section 303 (a) (3) of said act, as transfers to or for the use of corporations organized and operated exclusively for charitable and educational purposes, and they claim full credit for the amount paid on account of New York estate tax.

The respondent disputes all the above contentions made by petitioners and insists that the property held by the Bankers Trust Company as trustee under Trust No. 3 was transferred by the decedent to said company after the enactment of the Revenue Act of 1926, without consideration, and within two years of the decedent's death. The respondent further insists that Trust No. 3 falls within the provisions of said section 302 (c) and that the transfer of the property held in trust must be deemed and held to have been made in contemplation of death within the meaning of the Act.

In view of the fact that all the trust agreements, including the one executed November 27, 1926, referred to as Trust No. 3, contained paragraph "Tenth," which has been set out in full in our findings of fact, and in view of the further fact that we think said paragraph "Tenth" in these trust agreements brings them within the provisions of section 302 (d) of the Revenue Act of 1926, we do not find it necessary to decide whether or not respondent correctly included the property described in Trust No. 3 as a part of decedent's estate under section 302 (c), nor do we find it necessary to pass upon petitioners' assignment of error that section 302 (c) is unconstitutional.

The respondent also insists that if the legal effect of Trust No. 3 was merely to modify or amend Trusts Nos. 1 and 2 and did not operate to effect a transfer of any property rights over which the decedent had the power of disposition, the entire value of the property held under Trusts Nos. 1 and 2, as amended by Trust No. 3, constituted a part of decedent's gross estate under the provisions of section 302 (d).

The respondent further contends that the entire value of the property held under the Jamie Porter Trusts Nos. 1 and 2 should be included as a part of the decedent's gross estate under section 302 (d) of the Revenue Act of 1926. Section 302 (d) and (h) of the Revenue Act of 1926, read:

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

*　　　*　　　*　　　*　　　*　　　*　　　*

(h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f) and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act.

By reading paragraph "Tenth," which was a part of each of the trust instruments involved in the instant case, it will be seen that the

settlor reserved the right to himself to *modify or alter* the indentures. The only restrictions placed on this power was that the donor could not make himself or his estate the beneficiary. Outside of this limitation his power to *alter or modify* was unlimited. He went so far as to say in said paragraph " Tenth ": *"No one, born or unborn, shall have any right, interest, or estate under this indenture except subject to the proper modification or alteration thereof."* And this power to alter or modify existed right up to the day of his death. It was again reserved by him in the trust agreement No. 3, which he executed three days before his death, November 27, 1926. It was a power outstanding when he died and only death extinguished it. Up until the very day of his death he might have completely changed the beneficiaries of the trusts. Their estates were only made secure when the hand of death extinguished the power.

*May* v. *Heiner*, 281 U. S. 238, and the group of cases following it, cited by counsel for petitioner in their brief, it seems to us, have no application. Said cases concern a situation where the grantor of property in a deed or the settlor of a trust has made an irrevocable conveyance of the property or revocable only by and with the consent of adverse interests, subject only to a reservation to himself of a life estate. What the Supreme Court held in *May* v. *Heiner*, *supra*, and the group of cases following it, was that where there has been an irrevocable conveyance of the property with a reservation of the life estate to the grantor, nothing passes by his death when the life estate is extinguished. The title had already passed by the prior conveyance. It was to cure the effect of the decision of *May* v. *Heiner*, *supra*, that Congress on May 3, 1931, adopted a Joint Resolution amending section 302 (c) of the Act of 1926, but this section 302 (c), as amended by the Joint Resolution of May 3, 1931, has nothing whatever to do with section 302 (d), as we view it. In the instant case the donor had not made an irrevocable conveyance of the property to the trustee reserving a life estate to himself, but, on the contrary, had expressly reserved to himself the right to alter and amend and modify the trust agreements.

We think that even without section 302 (d) of the 1926 Act, under the principles of *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, and *Chase National Bank* v. *United States*, 278 U. S. 327, the property conveyed by the trusts in the instant case should be included as a part of decedent's estate. But, if there should be any doubt about that, it seems to us it has been removed by Congress in the enactment of section 302 (d) of the Revenue Act of 1926. *Reinecke* v. *Northern Trust Co.*, *supra*, and *Chase National Bank* v. *United States*, *supra*, construed acts prior to the Revenue Act of 1926, which acts did not contain any section 302 (d) (h). It seems to us that the aim of

Congress, in inserting the provisions of subparagraph (d) of section 302, was to prevent an avoidance in whole or in part of the estate tax by a method of disposition which would enable the owner of property so long as he lived to control the future benefits and disposition of property as effectually as by will, and the provision under review is an adjunct of the general scheme of taxation of which it is a part entirely appropriate as a means to that end.

It therefore seems clear that under the plain language of section 302 (d) of the Revenue Act of 1926, all the property conveyed by the trust instruments involved in the instant case must be included as a part of decedent's estate unless that clause in paragraph " Tenth " of the trust instruments, wherein the donor provided that in any alteration or modification of the trust instruments, he could not designate himself or his estate as the beneficiary, takes it out of the purview of the statute. We have, however, already decided that question adversely to petitioner in *Loring A. Cover et al.*, 17 B. T. A. 1177 and *Bank of New York & Trust Co.*, 20 B. T. A. 677. And if not in those two cases, certainly we have decided it adversely to petitioner in *Estate of George R. Cook*, 23 B. T. A. 335.

Counsel for petitioner cite in support of their contention *Brady* v. *Ham*, 45 Fed. (2d) 454. It must be admitted that that decision does support petitioner's position, but, as we endeavored to point out in *Estate of George R. Cook, supra, Brady* v. *Ham, supra*, is contrary to what we conceive to be the plain language of the statute and the decisions of the Supreme Court in *Reinecke* v. *Northern Trust Co., supra*, and *Chase National Bank* v. *United States, supra*. It seems to us that the discussion in *Brady* v. *Ham, supra*, about the failure of the donor of the trust to reserve the right to confer upon himself or his estate the economic benefits of the property, is irrelevant. The estate tax levied by the Federal Government is a transfer tax.

In a case where the settlor of a trust has reserved the right to alter, modify or revoke the trust, substantial rights pass by reason of his death. Up to the very moment of his death, he has the right to exercise that power and the beneficiary of the trust may be ousted by the exercise of it. When the settlor dies that power is gone and that which up to that time was an insecure estate ripens into one which is completely vested. It is this transfer completed by death which the statute taxes and we think that the mere fact that the settlor has no power to make himself or his own estate the beneficiary has nothing to do with it.

On authority of *Reinecke* v. *Northern Trust Co., supra; Chase National Bank* v. *United States, supra; Loring A. Cover et al., supra; Bank of New York & Trust Co., supra;* and *Estate of George R. Cook, supra*, we hold that the value of the property at the time

of decedent's death, included in said trusts, should be included as a part of decedent's gross estate.

The claims for balances due from the decedent on subscriptions to the New North Country Hospital and to Princeton University for memorials therein, as set forth in our findings of fact, were valid and enforceable against decedent's executors.   See *In re Taylor's Estate*, 251 N. Y. 257; 167 N. E. 434; *Allegheny College* v. *National Chautauqua County Bank*, 246 N. Y. 369; 159 N. E. 173; *Keuka College* v. *Ray*, 167 N. Y. 96; 60 N. E. 325; 25 R. C. L. 1408.

In the case of *Jeptha H. Wade, Jr., et al., Executors*, 21 B. T. A. 339, relied on by petitioners, we held that the consideration for the pledges was the payment by others of large amounts of money to the same institutions and that the consideration for each pledge was adequate and full and in money or money's worth, within the meaning of section 303 (a) (1) of the Revenue Act of 1926.

In the instant case we have no such situation before us.   In the absence of proof of the adequate and full value in money or money's worth of the memorials erected or contracted for, the claims for balance of decedent's subscriptions paid by the executors may not be allowed as a deduction from decedent's gross estate.   *Georgianna M. Romberger et al., Executors*, 21 B. T. A. 193.

Petitioners further contend that, " If for any reason it should be determined that these pledges were not deductible as ' claims against the estate ' under Section 303 (a) (1), they were proper deductions as ' transfers to charitable and educational corporations ' under Section 303 (a) (3)."

Section 303 (a) (3) reads:

The amount of all bequests, legacies, devices, or transfers, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals.   The amount of the deduction under this paragraph for any transfer shall not exceed the value of the transferred property required to be included in the gross estate;   * * *

In order for a transfer which has been made to a charitable or educational corporation to be deductible from the gross estate it must be proved that such institutions are operated exclusively for charitable or educational purposes and that no part of their net earnings inure to the benefit of any private stockholder or individual.

So, even though the amounts claimed by petitioners as a deduction under section 303 (a) (3) come within the general provisions of that subparagraph (a matter which we do not now decide), we could not allow these amounts because we have no proof before us showing that the New North Country Community Hospital is operated exclusively for charitable purposes nor that Princeton University is operated exclusively for educational purposes and we have no proof showing that no part of the net earnings of these institutions inures to the benefit of any private stockholder or individual. This being the state of the evidence, petitioners' contention that these amounts be deducted from decedent's gross estate under the provisions of section 303 (a) (3) is denied. *Edward C. Moore, Jr., et al., Executors*, 21 B. T. A. 279; *Brennan* v. *Cabanne M. E. Church*, 192 S. W. 982; *Frohlinger* v. *Richardson*, 218 Pac. 497.

The evidence shows that the petitioners have paid New York estate tax in the amount of $866,135.98 in addition to all other State estate and inheritance taxes which have been allowed as credits by the respondent, and that claims for the credit of such New York estate-tax payments were filed with the respondent within three years after the filing of the Federal estate-tax return. The sum of $833,402.42 of the above amount was paid with respect to property included by the respondent as a part of the decedent's gross estate and $32,733.56 with respect to property which was not so included, but which respondent in his amended answer alleged should be so included.

The petitioners having paid the sum of $866,135.98 on account of the New York estate tax, in respect to property which we hold should be included in the gross estate of the decedent, are entitled, and we so adjudge, to full credit of same against the Federal estate tax determined in accordance with this opinion, to the extent it does not exceed the 80 per cent credit provided by section 301 (b) of the Act.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

SEAWELL, dissenting: I feel constrained to dissent from so much of the opinion of the Board as holds that the property embraced in the trusts mentioned should be included in the gross estate of the decedent.

The law here being applied provides for an estate tax on transfers of the net property of a decedent at the time of his death. (Section 301 of the Revenue Act of 1926.) The tax is not a succession tax, payable by the beneficiary, but a transfer tax payable at the hands of the personal representative of the deceased. (Sections 305 (a) and 314 (b).) The deceased did not own the property here sought

to be included in his gross estate at the time of his death. He had conveyed it away by trust deeds without power to revest it in himself or in his estate.

In neither Trust No. 1, Trust No. 2, nor Trust No. 3 did the decedent reserve the power to *revoke* the trusts. The reservations were merely of the power to *modify or alter;* not to *revoke.* The power so reserved was limited to modifications or alterations not in favor of himself or his estate, but were to apply only so far as the interests of third parties were concerned.

The decedent, in the instruments of November 27, 1926, reciting revocation of the trusts, did not purport to act by virtue of any other right or power except that contained in paragraph " Tenth " set forth in the findings of fact. A new trust was not created; the funds did not change hands; other grandchildren, subsequently born, were merely provided for.

Under the New York law, which is here applicable, the donor of a trust alone can not revoke the trust unless the power of revocation is expressly reserved. *Cazzani* v. *Title Guarantee & Trust Co.*, 175 App. Div. 369; affd., 220 N. Y. 683; 116 N. E. 1040; *Title Guarantee & Trust Co.* v. *Haven*, 214 N. Y. 468; 108 N. E. 819; *In re Carnegie's Estate*, 203 App. Div. 91; 196 N. Y. S. 502; affd., 236 N. Y. 517; 142 N. E. 266.

Where no power of revocation is reserved, attempts by the donor to revoke are void. *Garner* v. *Germania Life Insurance Co.*, 110 N. Y. 266; 18 N. E. 130; *Roberts* v. *Taylor*, 300 Fed. 257; *McPherson* v. *Rollins*, 107 N. Y. 316; 14 N. E. 411; *Dickey* v. *Goldsmith*, 60 Misc. 258, 111 N. Y. S. 1025.

The trusts could not be revoked by the donor, one of the beneficiaries being a minor. *Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298, 165 N. E. 454.

At the time of the execution of the trusts in question, all economic benefits in the trust funds passed from the decedent, without any right or power reserved to revoke such trusts or to repossess any part or interest in the funds.

In cases decided by the United States Supreme Court and relied on by the respondent, where property has been included in the gross estate for Federal estate-tax purposes, the decedent had a legal right, direct or contingent, under which he, to the moment of his death, might acquire some economic benefits in the property concerned. In *Tyler* v. *United States*, 281 U. S. 497, the decedent shared with his wife the ownership and enjoyment of the property during his life and if the decedent had survived his spouse, he would have acquired the whole property. At his death there was a shifting of economic benefits from him to his wife.

1028

In the case of *Chase National Bank* v. *United States*, 278 U. S. 327, the decedent, by virtue of the power to change beneficiaries, could make the insurance policies payable to his estate for estate purposes, secure the cash surrender value of the policies, or borrow against the policies.

In *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, the donor could revest in himself the principal of the trust.

The Supreme Court has refused to include in decedent's gross estate property no interest in which passed from the decedent at death. *May* v. *Heiner*, 281 U. S. 238; *Reinecke* v. *Northern Trust Co.,. supra;* and *Nichols* v. *Coolidge*, 274 U. S. 531.

Upon the hearing and in respondent's brief, only slight contention was or is made that the trust funds should be included in the gross estate by reason of section 302 (c) of the statute. Petitioner directly challenged the constitutionality of this section under the decision of the Supreme Court in *Schlesinger* v. *Wisconsin*, 270 U. S. 230. The evidence shows clearly that the instruments of November 27, 1926, were not made in contemplation of death. Respondent placed his principal reliance on section 302 (d), which provides that there shall be included in the gross estate of every decedent at the time of his death all property: " To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, *where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *.*"

In the trust deeds involved here, power to amend and alter was reserved to the donor—the decedent; but this was not a general power, but a limited power as set out in the facts recited in the main opinion. Under the express limitation of the power, the decedent could not exercise it by deed or will, or otherwise, in favor of himself or his estate. The possessor of a general power of appointment has authority to dispose of the property at his death by will and his position is not unlike that of an owner, for he can make himself during life and his estate thereafter the beneficiary of the trust. An unlimited power to amend, alter or revoke a deed of trust is equivalent to a general power of disposition and a general power of disposition is the practical equivalent of a fee. *Bullen* v. *Wisconsin*, 240 U. S. 625; *Leser* v. *Burnet*, 46 Fed. (2d) 756; Sugden, Powers, 8th ed., 396.

The failure to exercise · this general power of appointment, in effect, results in a transfer from the donee's own estate (to which he has the power to give it) and a transfer to the estate of others who take because of his death and the failure to exercise the power during

life in his own favor or in the favor of others. Property passing under such general power of appointment may be subject in the hands of the donee of the power to the claims of his creditors (*United States* v. *Fields*, 255 U. S. 257); or to the claims of trustees in bankruptcy (*Cohen* v. *Samuels*, 245 U. S. 50); and may be included in the estate of the decedent for estate-tax purposes (*Chase National Bank* v. *United States*, *supra*). But under a special, naked or limited power of appointment, such as is here under consideration, the decedent could not have sold or assigned the power (*Jones* v. *Clifton*, 101 U. S. 225). A failure to exercise such limited power can not result in any transfer of anything from the decedent, for there is no beneficial interest or estate in him to be transferred; his creditors have no claim upon his power of appointment nor can they levy execution or distraint against him while he lives, on such account, nor against his estate when he is dead; if he should become a bankrupt, no trustee in bankruptcy would have any claim against the trust funds; his interest in the trust fund being only such limited power of appointment, his estate possesses nothing of value in it to be included in the gross estate. Certainly, " *to the extent of his interest therein* " would not include the whole value of the property. *Reinecke* v. *Northern Trust Co.*, *supra;* *Nichols* v. *Coolidge*, *supra;* *May* v. *Heiner*, *supra*. The Circuit Court of Appeals for the First Circuit, in the case of *Brady* v. *Ham*, 45 Fed. (2d) 454, had under consideration a trust identical with the trusts here involved, except the power to change and alter the trust and to name any other beneficiaries was limited in that case to beneficiaries other than the maker of the trust; whereas in the case before us the limitation of the power applies not only to the maker of the trusts, but his estate also. In the *Brady* v. *Ham* case, the court, by unanimous opinion, said that the decedent had expressly deprived herself of all economic benefits in the trust estate; that those benefits passed at the time of the execution of the declaration of trust, and such estate was not includable in the gross estate of the decedent, and that " To hold that such property was subject to a transfer tax would amount to what the Supreme Court had termed * * * an arbitrary and capricious exercise of legislative power."

Moreover, it is suggested that the part of section 302 (d) added by the Revenue Acts of 1924 and 1926, and which is italicized in the above quotation, is ambiguous and susceptible of different interpretations and meanings. Do the words " any change " mean (1) a change however slight, or (2) a change without limitation? Webster defines the word " any " to mean: " Unlimited, and indefinite number, quantity or degree," as well as " some." Does the statute mean power to make some slight change, or unlimited power to make

any change? One of the trusts herein provides that when Mrs. Davisson reaches the age of 30 years, the principal fund shall be paid to her. By way of illustration, if the sole power reserved had been to change the 30 years to 40 years, would that sole reserved power subject the trust funds to be included in the gross estate of the decedent at the time of his death? If the power to postpone to the beneficiary the enjoyment of the principal fund for ten years is power sufficient to make such change in the trust as will require the fund to be included in the decedent's gross estate, would not the power to postpone such enjoyment five years or one year or one month have the same effect? If " any change " means any slight change, even a power to cause a day's postponement, under the construction contended for, would seem to comply with the provisions of the statute. Such construction, it appears to me, would contain some of the elements of capriciousness condemned in several adjudicated cases. I prefer to think, as was held by the Circuit Court of Appeals for the First Circuit (*White* v. *Erskine*, 47 Fed. (2d) 1014), that Congress did not intend by section 302 (d), to create a new form of excise tax, that is, a tax on the power in the grantor to alter or amend a trust executed by him when the power so reserved is limited as in this case. Cf. *Frew* v. *Bowers*, 12 Fed. (2d) 625. To hold under the statute that W. H. Porter's estate should be taxed on the value of the property theretofore conveyed in trust, irrevocably, by him, and not owned by him, in whole or in part, and of which no beneficial interest remained in him, at the time of his death, is to raise a serious doubt as to the constitutionality of the Act of Congress. To hold that by the power to make " any change " in the trust, Congress in the statute meant an unlimited power, to make " any change," or a power to make a change, such as would leave with the settlor power to revest the property in himself, is to adopt a more reasonable construction and to avoid the doubt as to the constitutionality of the Act. "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." *Panama R. R. Co.* v. *Johnson*, 264 U. S. 375.

SMITH agrees with this dissent.

---

MATTHEWS, dissenting: I dissent from the majority opinion in so far as it relates to the trusts. All the trusts in question (except the so-called Trust No. 3) were executed while the Revenue Act of 1918 was in force and none of the trusts was made in contemplation of death. The 1918 Act had no counterpart of subdivisions (d) and

(h) of section 302 of the Revenue Act of 1926. The shifting in the economic interest in the trust property was complete as soon as the trusts were made. The donor parted with the legal title and all beneficial interest. He reserved no power to revoke the trusts, by which he could recall the trust property. The power reserved was to alter or amend in any manner in so far as the interests of third parties were concerned, but not in such manner as to be in his own favor or in favor of his estate. The alteration or amendment of Trusts Nos. 1 and 2 by the instrument designated Trust No. 3 did not have the effect of revesting the property in the donor and the retransfer of such property to the trustees. It was not, therefore, equivalent to the creation of a new trust.

It seems to me that these trusts are in all material respects similar to the five trusts which in *Reinecke* v. *Northern Trust Co.* were held not to be subject to the tax imposed by reason of the provisions of sections 401 and 402 (c) of the Revenue Act of 1921. Section 402 (c) of the Revenue Act of 1921 is identical to the same section of the Revenue Act of 1918. The trusts were not made in contemplation of death; the donor had divested himself of all economic interest in the trust property at the time he created the trusts; the power to alter or amend was not broad enough to revest in him or his estate any interest in the property, and there was no provision in the estate-tax act then in force taxing transfers in trust not made in contemplation of death, where the power to alter or amend is reserved. As Mr. Justice Stone said in *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339:

* * * The shifting of the economic interest in the trust property which was the subject of the tax was thus complete as soon as the trust was made. His power to recall the property and of control over it for his own benefit then ceased and as the trusts were not made in contemplation of death, the reserved powers do not serve to distinguish them from any other gift inter vivos not subject to the tax.

See also *May* v. *Heiner,* 281 U. S. 238. As the transfers were nontaxable when made, they can not be subjected to tax by a later estate-tax act. They are in the same class as trusts made in contemplation of death before the 1916 estate-tax act was passed, by persons who died subsequent thereto, and with gifts made in 1924 before the gift-tax act was enacted. The Supreme Court has held that such trusts and gifts can not be subjected to the tax. See *Shwab* v. *Doyle,* 258 U. S. 529; *Nichols* v. *Coolidge,* 274 U. S. 531; *Blodgett* v. *Holden,* 275 U. S. 142; 276 U. S. 594, and *Untermyer* v. *Anderson,* 276 U. S. 440. I think the transfers by the trusts here in question are not subject to the tax imposed by sections 301 and 302 (d) and (h) of the Revenue Act of 1926.