In the Matter of the Estate of LAWRENCE DASHNAU, Deceased.

Surrogate's Court, Oswego County, December 30, 1948.

*Thomas M. McGough* for George J. Coles, Oswego County Treasurer, as administrator of the estate of Lawrence Dashnau, deceased, petitioner.

*William M. Gallagher* for Marguerite Lagoe, claimant.

*Harry C. Mizen* for Raymond Dashnau and others, objectants.

PENNEY, S. The petition of the administrator for an order to sell real property sets forth among other allowed claims the promissory note at issue in this proceeding. The document dated August 31, 1946, recites a promise to pay to claimant on demand at the Oswego County National Bank the sum of $7,500 with interest and in all respects conforms to the requirements of a promissory note contained in section 320 of the Negotiable Instruments Law.

It appears that the decedent and his wife lived together in their home in the city of Oswego until the latter's death in August, 1946. Claimant is their daughter. During the two or three years immediately prior to her mother's death, the claimant resided in her own separate home with her husband and was called in by her father to care for her mother on two or three occasions when the latter was ill or had sustained injury. On at least one of these occasions the claimant came to Oswego from

Rome, New York, where she and her husband then resided and remained for several days caring for her mother. On August 31, 1946, the day following the mother's funeral, claimant had a conversation with her father in the latter's home in regard to the note in question but what was said does not appear in the record. On that occasion the father showed the claimant the note which was a printed form with the blanks partially filled in. She assisted him in filling in part of the blanks and he then went to the office of the witness McPeak, a local real estate agent and broker, to whom he showed the note and at the latter's suggestion filled in the place of payment and affixed his signature. At that time decedent told McPeak '' he wanted to protect her for what she had done for him — in payment of what she had done for him and what he thought she would be able to do for him.'' The same evening or the next day decedent handed the completed note to the claimant at his home and on the following Tuesday she filed the instrument in the Oswego County Clerk's Office where it still remains. It was produced on the trial by the county clerk pursuant to a subpœna duces tecum. On the day the note was delivered to the claimant or the day after, claimant and her husband gave up their separate domicile and moved into decedent's home where they remained until the latter's death on January 16, 1948. During that period the claimant performed all of the household duties in decedent's home and she and her husband purchased the food consumed by the family. The decedent apparently furnished the other expenses of maintenance.

The foregoing constitutes a fair statement of the circumstances surrounding the execution and delivery of the note as they appear from the testimony.

Objection to the allowance of the note as a valid claim against decedent's estate is made on the grounds (1) that it was given wholly without consideration; (2) that delivery to the claimant was never made by the decedent, and (3) that demand for payment was never made during the decedent's lifetime.

The second and third objections can be disposed of without difficulty. Delivery clearly appears from the undisputed testimony of the claimant called as a witness for the objectants and from the testimony of the deputy county clerk who was examined concerning the filing of the note in his office. The liability of indorsers is not involved in this proceeding and the delay in demand for payment from August 31, 1946, to January 16, 1948, the day of decedent's death was not unreasonable. (Negotiable Instruments Law, § 131.)

This leaves only the question of consideration for determination. Claimant being the original payee, the estate may defend on the ground of lack of consideration. (*Du Bosque* v. *Munroe,* 168 App. Div. 821; *Dougherty* v. *Salt,* 227 N. Y. 200.)

But the inquiry can only be as to whether there was any consideration and not as to the adequacy thereof. (*Kelly* v. *Theiss,* 21 Misc. 311; *Yarwood* v. *Trusts & Guarantee Co.* [*Ltd.*], 94 App. Div. 47; *Root* v. *Strang,* 77 Hun 14.)

The recitation in the note '' for value received '' raises a presumption of an adequate consideration which may be rebutted by the objectants. (*Du Bosque* v. *Munroe, supra.*)

A value sufficient to support a promissory note is any consideration sufficient to support a simple contract. (Negotiable Instruments Law, § 51.) · Consideration is not insufficient because of the fact that part of it does not comply with the requirements of sufficiency. (Restatement, Contracts, § 84.)

Objectants contend that the services performed by the claimant in caring for her mother were done without agreement for or expectation of compensation and, therefore, constitute no consideration for the delivery of the note. Mere friendly acts do not constitute consideration (*Blanshan* v. *Russell,* 32 App. Div. 103), and it is true that the law presumes that services rendered in the family relationship by a child to a parent are rendered gratuitously but such presumption is rebutted if the claimant shows an agreement whereby the testator was to pay and she to receive compensation and the services were rendered pursuant to such agreement. (*Matter of Dailey,* 43 Misc. 552.)

If it can be fairly inferred from all the evidence that the *only* consideration for the delivery of the note in question was the occasional prior service rendered by the claimant to her mother at the request of the decedent, then we must hold that the note was without consideration and does not constitute a valid claim against this estate. But I am unable to make any such inference. If we go further and can fairly infer that the services rendered by claimant subsequent to her mother's death were performed pursuant to an agreement between the claimant and her father when the note was given such agreement or promise (to perform future services) constitutes consideration. '' But if a thing is to be done by the promisee, be it ever so small, this is a sufficient consideration to sustain the promise.'' (*Matter of Taylor,* 251 N. Y. 257.)

We find the claimant moving into the home of her father on the same day or the next day after he had given her this note

and thereafter for a period of approximately eighteen months and until his death managing his household and furnishing the food consumed therein. She gave up her own home which she had occupied for a considerable period of time. I cannot believe there was no connection between these events and that the sequence thereof was merely coincidental. She was one of seven children, three of whom lived in Oswego, three in Rochester, New York, and one in Newark, New York. Any of them had the same filial obligation to take care of their father as did the claimant, but she alone undertook the service.

The inference seems inescapable that she promised to and did perform these services relying upon the promise of her father as contained in the note. Inference is never certainty, but it may be plain enough to justify a finding of fact. (*Tortora* v. *State of New York,* 269 N. Y. 167.)

This is not a case where the plaintiff's proof in the first instance shows a consideration legally insufficient to maintain the promise thus overcoming the presumption of consideration as effectively as though such proof had been introduced by the defendant. (*Matter of Pinkerton,* 49 Misc. 363.)

The claimant offered the note, proved delivery and then rested on the presumption of consideration flowing from the recital in the instrument itself. The objectants then called the claimant as their witness and elicited from her testimony as to the nature and extent of the services rendered to her mother prior to the delivery of the note being careful not to touch on services rendered subsequent thereto. Had the claimant herself offered this proof and then rested, the court would necessarily have to assume that such proof constituted the only consideration for the note and being legally insufficient would have to dismiss the claim. (*Matter of Pinkerton, supra.*) But the claimant thereupon resumed the burden of proof and showed subsequent services down to the date of her father's death. If these services were rendered pursuant to decedent's promise to pay therefor as contained in the note then that instrument constitutes a valid obligation. (*Matter of Taylor, supra.*)

The testimony of the witness McPeak that the decedent told him he wanted to protect and pay his daughter for what she had done and would do for him and the further testimony showing the nature and extent of the services rendered to her father following her mother's death and after the delivery of the note not only destroy the presumption such services were rendered gratuitously but raises a stronger presumption that the decedent wished to pay for the services his daughter had rendered and

was to render and that the daughter expected to receive such payment. Even though the amount she may receive now appears to be in excess of the value, nevertheless the father had a right for himself to measure and fix such value and pay accordingly and if no part of such consideration was wanting at the time the note was given and no part subsequently failed, although the consideration is inadequate, nevertheless the note is a valid obligation. (*Yarwood* v. *Trusts & Guarantee Co.* [*Ltd.*], *supra.*)

This court has never been and is not now sympathetic to exorbitant claims made against estates after death has effectively sealed the lips of the person against whom payment is sought and is reluctant to allow this claim in the amount of the note, but only entire lack of consideration will invalidate the instrument and the evidence does not permit such a finding. There must have been some relationship between the delivery of the note to the claimant and her immediate assumption of household duties in her father's home. I am forced to conclude that there was a definite agreement between decedent and his daughter.

Assuming I am correct in the conclusion so drawn, it must be borne in mind that the parties had no way of knowing at the time the agreement was made how long the decedent would live and claimant's services required.

This note does not constitute an attempted testamentary disposition of property without the formalities thereby required. It became effective at the time it was executed and delivered and not upon decedent's death although demand for payment was postponed until subsequent to his death.

Undoubtedly the claimant was incompetent to testify concerning personal transactions between herself and the decedent. (Civ. Prac. Act, § 347.) But the evidence was received without objection and may be considered as a part of the proof by the court. (*Hickok* v. *Bunting*, 67 App. Div. 560; *Matter of Christie*, 167 Misc. 484.)

Objectants laid stress upon the fact that a corner of the note had been torn and mended with tape. It appears beyond question that this mutilation occurred while the note was on file in the Oswego County Clerk's Office and there is no evidence that the holder mutilated the instrument with intent to cancel. (*Matter of Lock*, 187 Misc. 535.)

For the reasons herein stated I hold that the note in question constitutes a valid obligation against decedent's estate for the face amount thereof plus interest.

Decree may be entered in accordance herewith.